UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DAVID MORTON EEDS**,

Debtor.

Case No. **14-61005-7**

MEMORANDUM OF DECISION

At Butte in said District this 16th day of March, 2015.

Pending in this Chapter 7 case is the amount of damages to be awarded to the Debtor David Morton Ann Eeds' ("Eeds" or "Debtor") against CF Capital Finance, Inc. ("CF Capital") for its willful violation of the automatic stay under 11 U.S.C. § 362(k)(1), when CF Capital continued garnishment of Eeds' wages after the date of the filing of Eeds' bankruptcy petition.  This Court granted Debtor's Motion for Sanctions (Document No. 18) against CF Capital on December 2, 2014, after CF Capital failed to file a response and request for hearing on Debtor's Motion within the allowed notice period.  A hearing on the amount of damages to be awarded to the Debtor was held after notice at Great Falls on March 6, 2015.  Eeds appeared and testified, represented by attorney D. Randy Winner ("Winner") of Great Falls.  No appearance was made at the hearing on behalf of CF Capital.  Exhibits ("Ex.") A and B were admitted into evidence.  At the conclusion of the Debtor's case-in-chief the Court granted Debtor's counsel time to submit an affidavit of attorney's fees incurred, and took the matter under advisement. Winner filed his affidavit of attorney's fees on March 9, 2015, which has been reviewed by the Court, together with the record and applicable law.  This matter is ready for decision.

This Court has jurisdiction of this bankruptcy case under 28 U.S.C. § 1334(a).  Debtor's Motion for Sanctions for violation of the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2).  For the reasons set forth below, sanctions in the total amount of $5,183.30 will be awarded to the Debtor

against CF Capital as sanctions for its willful violation of the stay.

## FACTS & PROCEDURAL HISTORY

David Eeds is employed in the oil industry in the "Bakken Formation" at Williston, North Dakota. He resides in Malta, Montana, when he is not working in the Bakken. CF Capital is a collection agency based in Mesa, Arizona, where Eeds lived prior to his employment in the Bakken.

Eeds testified that while he was in Mesa, Arizona, he owned a car which was repossessed by a creditor. That creditor sued Eeds for the unpaid balance and obtained a judgment against him in the Arizona court. The judgment debt was turned over to CF Capital for collection, and CF Capital put in place a garnishment against Eeds' wages in North Dakota.

Ex. A is Eeds' statement of earnings and deductions from his employer for the period with end date 8/23/2014. The check date on Ex. A is stated as 8/29/2014. Ex. A shows a garnishment amount for the current pay period of $657.99.

Two days before the check date stated on Ex. A, Eeds filed his voluntary Chapter 7 petition on August 27, 2014, with his Schedules and Statement of Financial Affairs ("SOFA"). The SOFA at item 4 lists CF Capital's collection suit against Eeds in the Maricopa County Justice Courts, State of Arizona. Schedule F lists CF Capital as a creditor holding an unsecured nonpriority claim for deficiency after repossession of a 1996 Chevy Silverado in the amount of $5,737.00.

The notice of commencement of the case, meeting of creditors, deadlines, and a warning to creditors not to collect a debt take certain actions or risk being penalized, was sent to creditors on August 31, 2014, including to CF Capital at P.O. Box 549, 734 W. Main St., Mesa, AZ. The notice (Doc. 8) tells creditors they may not take certain action, such as "garnishing or deducting from the debtor's wages ...." Eeds testified that his attorney advised him that the filing of his bankruptcy petition would stop the garnishment of his wages. However, it did not stop.

Ex. B is Debtor's earnings statement for the period ending 9/6/2014, and check date 9/11/2014.

Ex. B shows that another $651.23 in Debtor's wages were garnished after the date of filing of Debtor's bankruptcy petition, for a total garnishment amount of $1,309.22.

Eeds testified that his attorney contacted CF Capital and asked it to cease garnishment of his wages, but CF Capital did nothing to stop the garnishment. Debtor's attorney Winner then called Debtor's employer's payroll office and got the garnishment stopped. Eeds testified that CF Capital has refused to refund the $1,309.22 in total wages garnished post-petition.

The § 341 meeting of creditors was held on September 22, 2014. The Trustee filed a no-asset report on September 29, 2014. A discharge of debts was entered on November 24, 2014.

Debtor filed his Motion for Sanctions against CF Capital on November 18, 2014, asking for sanctions against CF Capital under § 362(k) for willful violation of the stay by its post-petition garnishment of his wages and failure to refund them. Debtor requested actual damages in the amount of $1,309.22, plus travel and lodging expenses, lost wages incurred for Debtor to attend the hearing, plus attorney fees incurred in prosecuting Debtor's Motion. In addition Debtor requests an award of treble actual damages against CF Capital for its "flagrant disregard" of the automatic stay. At the hearing Winner argued that CF Capital's refusal to acknowledge the automatic stay and failure to refund the garnished wages goes beyond willful violation and justifies an award of treble damages.

Debtor's Motion was served on CF Capital at its street address in Mesa, Arizona. CF Capital did not file a response and request a hearing. Consequently, the Court entered its Order (Doc. 22) on December 2, 2014, granting Debtor's Motion for Sanctions and scheduling a hearing on the amount of damages to be awarded against CF Capital for its willful violation of the stay. That Order and notice was mailed to CF Capital, as was notice of the continued hearing, but CF Capital made no appearance at the March 6, 2015, hearing on damages.

Eeds testified that he missed two days of work to attend the hearing, and that he was scheduled to earn overtime for those two days for which he would have earned a net amount of $964 in wages. He

testified that he cannot make up those two missed days of work. In order to attend the hearing Eeds traveled from Williston to Malta, and then to Great Falls to testify. He testified that the distance from Malta to Great Falls is 201 miles, for a 402 mile round trip. The distance from Malta to Williston is about 215 miles, or a 430 mile round trip. Thus, Debtor's total mileage incurred attending the damages hearing in Great Falls on March 6, 2015, is 832 miles. Eeds testified that the mileage rated allowed by the United States of America, Internal Revenue Service, is $.565 per mile. The Court finds that Eeds incurred $470.08 in allowable mileage expense traveling between Williston and Great Falls for the hearing on damages. There is no evidence of any money expended by Eeds for meals or lodging.

Winner's affidavit sets forth services provided in relation to Debtor's Motion for Sanctions beginning 8/27/2014 through 5/9/2015.[1] Winner's legal services totaled 6.4 hours and his billing rate is $225 per hour, for a total of $1,440 in attorney fees. The billing records include Winner's services which resulted in stopping the garnishment of Debtor's wages, correspondence to CF Capital requesting a refund, drafting the Motion for Sanctions, preparation for and attending the hearing on damages. Winner did not request any costs. After review, the Court finds that the $1,440.00 in fees requested by Winner performed in order to stop the garnishment and litigate the Motion for Sanctions are reasonable and necessary for the estate.

### DISCUSSION

The Debtor's filing of his bankruptcy petition on August 27, 2014, gave rise to an "automatic stay." 11 U.S.C. § 362(a). The Ninth Circuit has repeatedly described the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *Sternberg v. Johnston*, 595 F.3d 937, 943 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 102, 178 L.Ed.2d 29 (2010), quoting *Eskanos & Adler, P.C. v.*

---

[1]The last four (4) entries on Winner's billing statements reflect obvious typos for entries dated 5/5/2015, 5/6/2015, and 5/9/2015, for the simple reason that the fifth month of 2015 has not yet arrived. These 4 entries clearly took place on March 5, 6, and 9 of 2015.

*Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002); *Eedsis Motors, Inc. v. Haw. Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993).  The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986).  The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).
>
> Section 362(k)[2] in effect in this case provides:
>
> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

*In re Snowden*, 769 F.3d 651, 658 (9th Cir. 2014); *Leetien, P.C., v. Roman (In re Roman)*, 283 B.R. 1, 9 (9th Cir. BAP 2002).

The long-standing rule followed by this and other courts is that a violation of the stay is willful if (1) the creditor knew of the stay and (2) the creditor's actions which violated the stay were intentional. *Roman,* 283 B.R. at 8; *Leetien & Adler*, 309 F.3d at 1215; *In re Reece*, 15 Mont. B.R. 474, 477-78 (Bankr. D. Mont. 1996), citing *In re Lile*, 103 B.R. 830, 836, 841 (Bankr.S.D.Tex.1989).  In *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003), the Ninth Circuit noted that § 362(k) provides for damages for willful violation of the stay upon a finding that the defendant knew of the automatic stay and that the defendant's actions, which violated the stay, were willful.  *See also Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 191 (9th Cir. 1995) (cited in *Roman*, 283 B.R. at 12-13).

A party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay.  *Dyer*, 322 F.3d at 1191, *citing Pinckstaff v. United States*, 974 F.2d 113, 115 (9th Cir. 1992).

---

[2]Section 362(h) was amended and redesignated to § 362(k) by enactment of BAPCPA in 2005.

5

Further, "once a creditor or actor learns or is put on notice of a bankruptcy filing, any actions intentionally taken thereafter are 'willful' within the contemplation of § 362([k])." *Risner*, 317 B.R. at 835, citing *Leetien & Adler*, 309 F.3d at 1215; *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. 920, 923 (Bankr. D. Mont. 1990).

Given the broad, self-executing, automatic stay described above, the Court found that CF Capital willfully violated the automatic stay when it continued garnishment of Debtor's wages after the date he filed his Chapter 7 petition. CF Capital had an affirmative duty to conform its conduct to the automatic stay once Eeds filed for bankruptcy. *Sternberg*, 595 F.3d at 943, 944; *Del Mission Ltd.*, 98 F.3d at 1151-52. This duty means that CF Capital needed to do what it could to remedy the violation. *Sternberg*, 595 F.3d at 944, 945. CF Capital failed its affirmative duty to remedy the violation. The evidence shows that CF Capital refused the Debtor's attorney's request to discontinue the garnishment of his wages, and that CF Capital refused the Debtor's request to return his wages which were garnished post-petition in violation of the stay. The garnishment of Debtor's wages stopped when Debtor's attorney contacted his employer's payroll office, but CF Capital's willful violation of the stay continues to this date by its refusal to return his wages which were garnished post-petition.

Such actions taken in violation of the automatic stay are void, not merely voidable. *Gruntz*, 292 F.3d at 1082; *40235 Wash. St. Corp. v. Lusardi*, 329 F.3d 1076, 1082 (9th Cir. 2003); *Schwartz v. United States*, 954 F.2d 569, 570-71, 575 (9th Cir.1992); *In re Deines*, 17 Mont. B.R. 114, 115 (Bankr. D. Mont. 1998); *Eedsis Motors, Inc.*, 997 F.2d at 586. A creditor who attempts collection of prepetition debt after it knows of the debtor's bankruptcy is subject to sanctions for willful violation of the automatic stay. *Del Mission Ltd.*, 98 F.3d at 1151; *see In re Goodman*, 991 F.2d 613 (9th Cir.1993). The postpetition collection actions initiated by the creditor in *Leetien* were in plain violation of the stay and void, and subject to sanctions. The bankruptcy court imposed sanctions for willful violations of the stay, and the district court and Ninth Circuit affirmed. *Leetien,* 309 F.3d at 1212. Concluding, the Ninth Circuit

6

wrote:

> We conclude that § 362(a) imposes an affirmative duty to discontinue post-petition collections actions. Sanctions are appropriate pursuant to § 362(h) because Eskanos willfully violated the automatic stay by maintaining the active collection action and unjustifiably delaying its dismissal after receiving notice of the bankruptcy petition.

*Leetien*, 309 F.3d at 1216; *see, Sternberg*, 595 F.3d at 943.

The Ninth Circuit quoted above noted that the creditor willfully violated the stay by maintaining an active collection action "and unjustifiably delaying its dismissal" after receiving notice of the stay. *Leetien*, 309 F.3d at 1216. *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. at 923 explains that "when a party acts with knowledge of a pending bankruptcy, a violation of the stay is considered willful and damages must be assessed." *Lile*, 103 B.R. at 836. An innocent stay violation can become willful if the creditor fails to remedy the violation after receiving notice of the stay. *Del Mission Ltd.*, 98 F.3d at 1151; *Abrams v. Sw. Leasing and Rental Inc.*, 127 B.R. 239, 241-44 (9th Cir. BAP 1991).

CF Capital maintained its collection action by continuing to garnish of his wages after it received notice of the filing of Debtor's bankruptcy petition, and refusing to stop the garnishment and refund the wages despite requests from Debtor's attorney. Such actions by CF Capital constitute willful violations of the stay with knowledge of Debtor's bankruptcy, and CF Capital failed its affirmative duty to remedy its violations. *Sternberg*, 595 F.3d at 944, 945; *Eskanos & Adler*, 309 F.3d at 1214-15; *Dyer*, 322 F.3d at 1191; *Roman*, 283 B.R. at 8; *Risner*, 317 B.R. at 835; *Reece*, 15 Mont. B.R. at 477-78.

Debtor offered evidence in the form of testimony and documents showing actual damages caused to Debtor in the amounts of: $1,309.22 in wages garnished by CF Capital's willful violation of the stay; $964.00 in lost wages for Debtor to attend the hearing on damages; and $470.08 in mileage for Debtor to travel from Williston and attend the hearing. Debtor's evidence is uncontroverted, and the Court finds that the Debtor is a credible witness. The Court finds that the total amount of actual damages caused by CF Capital's willful violations of the stay is $2,743.30.

**Punitive Damages.**

Eeds argues that an award of punitive damages against CF Capital is appropriate because of its "flagrant disregard" by refusing to acknowledge the automatic stay and failure to refund the garnished wages after being requested to do so by Debtor's attorney. Section 362(k) provides for punitive damages "in appropriate circumstances." *Snowden*, 769 F.3d at 657. "An award of punitive damages requires "some showing of reckless or careless disregard for the law or rights of others." *Id.,* quoting *In re Bloom*, 875 F.2d 224, 228 (9th Cir. 1989). In *Snowden* the Ninth Circuit affirmed an award of punitive damages in the amount of $12,000 based on evidence that the creditor failed to provide a policy or employee training about how to address debt collection following a bankruptcy. *Snowden*, 769 F.3d at 657-58.

In the instant case CF Capital completely ignored Debtor's bankruptcy filing and the automatic stay, ignored Debtor's attorney's request to stop the garnishment and refund Debtor's wages, and ignored the notice of hearing on Debtor's Motion for Sanctions. The evidence does not show the same kind of reckless or callous disregard for the law or rights of others by CF Capital as shown in *Snowden*. Rather, the evidence reflects CF Capital's complete failure to comply with the stay and respond to communications by Debtor's attorney aimed at curing the stay violations. In this Court's view this is sufficient evidence of reckless or callous disregard by CF Capital for the bankruptcy stay and Eeds' rights to impose punitive damages. *Snowden*, 769 F.3d at 657.

In *Eskanos* the Ninth Circuit affirmed an award of damages in the amount of $1,000.00, including punitive damages, imposed against a creditor when it delayed dismissing a state court collection action. 309 F.3d at 1212, 1215-16. Debtor requests an award of treble damages against CF Capital for its blatant disregard of the automatic stay. This Court agrees that a significant award of punitive damages is warranted in this case, but declines to award treble damages. The Court awards Eeds $1,000 in punitive damages against CF Capital for its reckless and callous disregard for the automatic stay and Eeds' rights.

**Attorney's Fees.**

The BAP in *Roman* cited Congress' intent that an award of attorney's fees and costs is mandatory upon a finding of a willful violation of the stay. *Id.*, 283 B.R. at 7, 9-10; *Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 876, 879 (9th Cir. BAP 1998); *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995). However, the Ninth Circuit in *Sternberg* concluded that attorney fees incurred in prosecuting a damages action for a stay violation, where the stay violation has been cured, is akin to an ordinary damages action for which attorney fees are not available under the American Rule. 595 F.3d at 948 ("We have never said that the stay should aid the debtor in pursuing his creditors. The stay is a shield, not a sword. *See, e.g.* [*Eedsis Motors, Inc.*, 997 F.2d at 585] ").

The Court notes that the BAP has observed that "fee shifting statutes, like § 362([k]) have given debtors an opportunity to use the statute as a sword rather than a shield against creditors, to courts' dismay[,]" and "that rewarding debtors too lavishly in § 362([k]) actions will encourage a cottage industry of precipitous § 362([k]) litigation[.]" *Roman*, 283 B.R. at 11, quoting *McLaughlin v. Fireman's Trust Mortg. Corp. (In re McLaughlin)*, 96 B.R. 554, 560 (Bankr. E.D. Pa. 1989).

Under *Roman* the Court must examine whether the Debtor could have mitigated his damages, and in determining the appropriate amount of attorney's fees to award courts look "to two factors: (1) What expenses or costs resulted from the violation; and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated." *Roman*, 283 B.R. at 12, quoting *In re GeneSys, Inc.*, 273 B.R. 290, 296 (Bankr. D.C. 2001) (other citations omitted).

In *Snowden* the Ninth Circuit explained: "*Sternberg* established a bright-line rule that attorneys' fees incurred in an attempt to collect damages *once the stay violation has ended* are not recoverable." 769 F.3d at 658, quoting *Sternberg*, 595 F.3d at 948. The evidence at the hearing showed that Debtor's attorney Winner was able to stop the garnishment of his wages by contacting his employer's payroll office, after CF Capital refused. However, CF Capital's stay violations have not ended because it has

failed to refund Debtor's wages garnished post-petition in violation of the stay, even after being requested to refund them by Debtor's attorney.

The evidence shows that CF Capital has failed its duty to remedy the stay violation. *Sternberg*, 595 F.3d at 944, 945. Thus, under *Sternberg*, *Snowden*, and *Roman*, 283 B.R. at 12, Eeds' attorney's fees incurred attempting to recover his wages garnished by CF Capital in willful violation of the stay are fully recoverable. The facts in this case are similar to the facts in *Snowden* and *In re Schwartz-Tallard*, 765 F.3d 1096 (9th Cir. 2014). In *Snowden* the creditor failed its affirmative duty to return property which it had wrongfully seized from the estate, but instead responded to an offer to settle with an email containing implied conditions and Snowden had to go to court to end the stay violation. 769 F.3d at 659. In *Schwartz-Tallard* the court awarded the debtor attorney fees because she was forced to defend a creditor's appeal of the bankruptcy court's ruling that the creditor violated the stay. 765 F.3d at 1100. In the instant case, as in *Snowden*, CF Capital failed its affirmative duty to return Debtor's wages which it had wrongfully garnished in violation of the stay. CF Capital did not offer to settle, or respond to Debtor's Motion, but simply ignored all of these proceedings.

Accordingly, the Court awards Eeds attorney's fees in the amount of $1,440.00 incurred in remedying CF Capital's stay violations under § 362(k). *Snowden*, 769 F.3d at 660; *Sternberg*, 595 F.3d at 940. The Court finds that the $1,440 fees for Winner's services is reasonable and that Winner attempted to mitigate the damages and fees by contacting CF Capital, but was rebuffed. *See Roman*, 283 B.R. at 12.

**CONCLUSIONS OF LAW**

1. This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a).

2. Eeds' Motion for Sanctions against CF Capital for willful violation of the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Eeds satisfied his burden of proof to show by a preponderance of the evidence that CF Capital

willfully violated the automatic stay by garnishing his wages post-petition, and by refusing Debtor's attorney's request that it refund the wrongfully garnished wages, while knowing of the automatic stay. Debtor showed actual damages of $1,309.22 in wages garnished in willful violation of the stay; $964 in wages lost attending the damages hearing; and $470.08 in mileage to attend the hearing. The total actual damages is the sum of $2,743.30.

    4. Eeds satisfied his burden to show reckless or careless disregard by CF Capital for the automatic stay and Eeds' rights. The Court awards Eeds punitive damages against CF Capital in the amount of $1,000.

    5. Eeds is entitled to an award of attorney's fees related to remedying CF Capital's stay violation from August 27, 2014, through March 9, 2015, in the total amount of $1,440.00.

    **IT IS ORDERED** a separate Order shall be entered in conformity with the above granting Eeds' Motion for Sanctions against CF Capital for willful violation of the automatic stay; and: (1) awarding Eeds actual damages in the total amount of $2,743.30 for wages garnished by CF Capital's willful violation of the stay, lost wages, and mileage under § 362(k); (2) awarding Eeds $1,000 in punitive damages against CF Capital under § 362(k); and (3) awarding Eeds $1,440.00 in attorney's fees against CF Capital under § 362(k).

                                                BY THE COURT

                                                _____
                                                HON. RALPH B. KIRSCHER
                                                U.S. Bankruptcy Judge
                                                United States Bankruptcy Court
                                                District of Montana